UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

BRAD PATRICK DONOHUE,            Case No. 2:16-cv-00788-MC

       Plaintiff,                              OPINION AND ORDER

   v.

DR. VARGO; DR. GULICK; J. WILLIAMS;
ROBERT WHITE; MICHAEL F. GOWER;
NURSE WILLIAMS; S. SHELTON; AMY
HUGHES; DR. KOLTES; DR. HEMPHILL;
MARK NOOTH; COLETE PETERS; JANE
DOE NURSE,

       Defendants.
_____

MCSHANE, District Judge:

     Plaintiff, a former inmate at the Snake River Correctional Institution (SRCI), filed suit pursuant to 42 U.S.C. § 1983 alleging deliberate indifference to his serious medical needs arising from the medical treatment he received for a shoulder injury. Defendants now move for summary judgment under Federal Rule of Civil Procedure 56. For the reasons set forth below, defendants' motion is granted.

1     - OPINION AND ORDER

BACKGROUND

Plaintiff has a long history of shoulder instability, dating back to 2004 when plaintiff injured himself playing basketball at SRCI. Gulick Decl. ¶¶ 5, 20, 31. Plaintiff's specific claims in this action pertain to medical care he received at SRCI during 2014 and 2015.

On or about March 14, 2014, plaintiff dislocated his right shoulder when he swatted at a fly. Compl. at 6. Plaintiff asked his cellmate to "shake" his arm back into socket and sought assistance from a correctional officer. Donohue Dep. 28-29; Gulick Decl. ¶ 21. The correctional officer informed Nurse Williams that plaintiff had dislocated his shoulder and was unsure whether he had gotten it "all the way back in." Donohue Dep. 29-30. Nurse Williams determined that it was not an emergency situation and directed plaintiff to fill out a "sick call" request. *Id.*; Gulick Decl. ¶ 21.

On March 16, 2014, plaintiff was examined by SRCI medical staff, and on March 18, 2014, plaintiff was examined by Dr. Gulick, who noted right shoulder pain with no current dislocation. Dr. Gulick submitted a request for possible rotator cuff repair to the Therapeutic Level of Care (TLC) Committee, and the request was denied because plaintiff retained acceptable function of his arm and shoulder. Gulick Decl. ¶¶ 22-23.

On April 8, 2014, Dr. Gulick examined plaintiff and reviewed dislocation prevention exercises with him. Dr. Gulick noted that plaintiff remained "very functional." *Id.* ¶ 27.

On April 29, 2014, Dr. Gulick submitted a request for a right shoulder MRI, and on April 30, 2014, the TLC Committee denied the request, finding that plaintiff's shoulder was functional and no medical provider had witnessed a dislocation. *Id.* ¶ 29.

Plaintiff's family offered to pay for an MRI or orthopedic consultation, and in May 2014, the TLC Committee authorized a consultation with Dr. Peterson, an orthopedic surgeon. *Id.* ¶ 30.

On June 27, 2014, Dr. Peterson examined plaintiff and diagnosed right shoulder instability, recommended an MRI and strengthening exercises, and opined that plaintiff ultimately would need shoulder stability surgery. Gulick Decl. ¶ 31.

On July 2, 2014, the TLC Committee authorized a right shoulder MRI, x-rays, and a follow-up appointment with Dr. Peterson. *Id.* ¶ 32.

On August 15, 2014, plaintiff received the MRI and on August 22, 2014, plaintiff saw Dr. Peterson for a follow-up appointment. Dr. Peterson recommended surgical stabilization of the right shoulder and provided some strengthening exercises to improve functioning of plaintiff's right shoulder and arm. *Id.* ¶¶ 34, 36.

On August 27, 2014, the TLC Committee approved right shoulder arthroscopic stabilization with Dr. Peterson. *Id.* ¶ 37.

On September 16, 2014, plaintiff spoke with Dr. Gulick and indicated that he wanted to delay his shoulder surgery while he was in segregated housing and wanted more time to strengthen his shoulder. Gulick Decl. at ¶ 38; Donohue Dep. 47-48, 55.

On February 23, 2015, Dr. Gulick examined plaintiff's left shoulder. Plaintiff reported symptoms similar to his right shoulder symptoms and requested an MRI of his left shoulder. Dr. Gulick ordered x-rays of plaintiff's left shoulder and referred the MRI request to the TLC Committee. The x-rays indicated: 1) mild degeneration of the joint with no evidence of joint separation, and normal appearance of the glenohumeral joint; 2) symmetric joints with no separation; and 3) mild degenerative hypertrophy of the joints. *Id.* ¶¶ 40-41.

On March 12, 2015, Dr. Gulick saw plaintiff for a follow-up examination and submitted another request to the TLC Committee for a left shoulder MRI at plaintiff's request. Dr. Gulick

noted that the findings did not support an MRI because plaintiff did not report pain and "could lift his left arm 45 degrees above horizontal." *Id.* ¶ 42.

On March 18, 2015, the TLC Committee denied the MRI request and recommended further observation of plaintiff's condition. *Id.* ¶ 43.

In April 2015, plaintiff reinjured his right shoulder and sought a second opinion regarding surgery, in light of questions and concerns he had about surgery at his young age. Donohue Dep. at 43-44, 55, 60.

On April 20, 2015, Dr. Gulick examined plaintiff and discussed the TLC Committee's recommendations with him, noting that plaintiff was scheduled for surgery "soon" on his right shoulder. Gulick Decl. ¶ 44.

On May 19, 2015, Dr. Gulick examined plaintiff and "noticed significant functional defects in his rights shoulder." *Id.* ¶ 45. Dr. Gulick submitted a request to the TLC Committee for a follow up appointment with Dr. Peterson. *Id.*

On May 29, 2015, the TLC Committee approved a follow up appointment with Dr. Peterson and noted that plaintiff's right shoulder surgery had previously been approved. *Id.* ¶ 46.

On June 26, 2015, plaintiff was examined by Dr. Peterson. *Id.* ¶ 47. Dr. Peterson noted plaintiff's left shoulder symptoms and recommended that plaintiff receive an MRI of his left shoulder prior to right-shoulder surgery. Gulick Decl. ¶ 48. The TLC Committee approved follow-up appointments with Dr. Peterson but denied his recommendation for a left shoulder MRI "with a recommendation to observe longer as the left shoulder seemed functional." *Id.* ¶ 50.

On July 24, 2015, plaintiff saw Dr. Peterson again. He noted that plaintiff was scheduled for right shoulder surgery and recommended an MRI of his left shoulder. *Id.* ¶ 51. The TLC Committee disagreed with Dr. Peterson's assessment and thought plaintiff's right shoulder

should be prioritized; the TCL Committee also apparently believed that Dr. Peterson would not perform surgery on plaintiff's right shoulder unless it authorized an MRI for plaintiff's left shoulder. *Id.* ¶ 52.

On July 29, 2015, the TLC Committee discussed Dr. Peterson's recommendations, approved right shoulder surgery, and transferred plaintiff's care to another surgeon, Dr. Foote. *Id.* ¶ 53. The TLC Committee determined that plaintiff's left-shoulder complaints would be monitored and addressed after his right-shoulder surgery. *Id.*

On August 4, 2015, plaintiff spoke with SRCI medical staff about his shoulder issues. Staff notes reflect that plaintiff's right shoulder "is approved [for] surgical repair but put on hold pending left shoulder work-up. This was done at patient's request. He states [right] shoulder unstable, [left] shoulder has hurt just as long and… pain is worse. He wants to know what is wrong [and] if it will require surgery too. He would like to increase his strength [and follow up] in a few months [with] Dr. Peterson and decide what to do at that time. Ortho consult on hold for now." Gulick Decl. ¶ 54 & Att. 2 at 58.

In September 2015, plaintiff reinjured his right shoulder. *Id.* ¶¶ 56-57. At that time, plaintiff wanted to proceed with surgery but, according to plaintiff, Dr. Gulick stated that his shoulder care had been "cancelled." Donohue Depo. 60-61.

On September 23, 2015, the TLC Committee approved right shoulder stabilization by Dr. Foote. Gulick Decl. ¶ 58.

On October 20, 2015, Dr. Gulick examined plaintiff and determined that no MRI was needed for his left shoulder. *Id.* ¶ 60.

On November 16, 2015, Dr. Foote examined plaintiff and recommended right shoulder surgery approved by the TLC Committee. *Id.* ¶ 61.

On January 2, 2016, plaintiff was transported to the Riverside Orthopedic Clinic for a pre-operative evaluation with Dr. Foote. In addition to plaintiff's right shoulder, Dr. Foote noted left shoulder instability. *Id.* ¶ 62.

On January 6, 2016, the TLC Committee considered a left shoulder MRI and denied the request, finding that plaintiff should postpone consideration of an MRI for his left shoulder until he had the surgery for his right shoulder. *Id.* ¶ 63.

On January 18, 2016, Dr. Foote performed a successful arthroscopic repair of plaintiff's right shoulder. Gulick Decl. ¶ 64.

On January 28, 2016, Dr. Foote saw plaintiff for post-operative follow-up. Dr. Foote ordered plaintiff to continue his exercise program, continue pain medication as needed, and consider a left shoulder MRI. *Id.* ¶ 65.

On February 2, 2016, plaintiff reinjured his right shoulder and was admitted to the infirmary for observation. *Id.* ¶ 66. The next day, the TLC Committee approved a follow-up appointment with Dr. Foote and denied a request for a left shoulder MRI. *Id.* ¶ 67.

On February 22, 2016, in response to an inquiry from an SRCI nurse, Dr. Foote recommended conservative exercises for plaintiff's right shoulder in order to avoid further injury. *Id.* ¶ 68.

On May 31, 2015, plaintiff had a follow-up appointment with Dr. Foote, and he ordered physical therapy and recommended a right shoulder MRI to confirm that no additional injury had occurred on February 2. Gulick Decl. ¶ 69.

On July 13, 2015, plaintiff had an MRI of his right shoulder, which indicated a minor tear, mild to moderate osteoarthritis, and minimal tendinopathy. *Id.* ¶ 70.

On September 14, 2016, plaintiff was released from ODOC custody. *Id.* ¶ 71. Plaintiff did not receive further treatment for his left shoulder prior to his release.

## DISCUSSION

Plaintiff concedes that all but two of his claims are untimely or barred for failing to exhaust his administrative remedies. Plaintiff's remaining claims allege the failure to provide adequate treatment after he dislocated his right shoulder in March 2014, and the denial of an MRI for his left shoulder and surgery for his right shoulder in August and September of 2015. Plaintiff contends that these failures constitute deliberate indifference to his serious medical needs in violation of his rights under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) ("An inmate must rely on prison authorities to treat his medical needs"); *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) ("Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety.").

Defendants move for summary judgment on grounds that the evidence does not demonstrate deliberate indifference to plaintiff's serious medical needs and they are entitled to qualified immunity. To prevail, defendants must show that there is no genuine dispute as to any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must construe the evidence and draw all reasonable inferences in the light most favorable to plaintiff. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

To sustain a claim for deliberate indifference to his serious medical needs, plaintiff must establish the existence of "a serious medical need" and that "defendant's response to the need was deliberately indifferent." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant

injury or the 'unnecessary and wanton infliction of pain.'" *Id.* (citation omitted). Prison officials may demonstrate deliberate indifference by denying, delaying, or intentionally interfering with medical treatment, or by the manner in which they provide medical treatment. *Id.*; *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002). Where a prisoner alleges a delay in receiving medical treatment, the delay must have led to "significant harm." *Hallett*, 296 F.3d at 746.

Plaintiff first maintains he should have received immediate medical treatment after he dislocated his shoulder on March 14, 2014, and that Nurse Williams' less than immediate response to his complaints was constitutionally deficient. Granted, Nurse Williams' dismissal of plaintiff's dislocated shoulder was arguably callous when viewed in the light most favorable to plaintiff. However, plaintiff was examined by Dr. Gulick two days later and received x-rays, and his condition was deemed a non-emergent issue. Gulick Decl. ¶¶ 22-23. Despite the fact that plaintiff experienced a delay in receiving medical treatment, he does not allege substantial harm arising from the two days he waited for a medical examination. *See Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990) (a delay in medical treatment must cause substantial harm to support an Eighth Amendment violation). Significantly, plaintiff does not indicate what alternative treatment he should have received. Plaintiff was evaluated by a physician who obtained x-rays, and, during the next few months, the TLC Committee authorized an orthopedic consultation (though paid for by plaintiff), an MRI, and surgery on his right shoulder. Accordingly, I find no deliberate indifference in response to plaintiff's dislocation in March 2014.

With regard to the denial of the authorization for an MRI of plaintiff's left shoulder, the record is similarly absent of evidence of deliberate indifference. Although Dr. Peterson recommended an MRI, the TLC Committee rejected his recommendation because plaintiff

retained function in his left shoulder and committee members felt that plaintiff's right shoulder should take priority.[1] Gulick Decl. ¶ 52 (explaining, "In my medical opinion, the two shoulder issues were separate, and treatment for the right shoulder should have been prioritized as it was more severe").

To establish deliberate indifference in these circumstances, plaintiff must set forth sufficient facts suggesting "that the course of treatment" the TLC Committee "chose was medically unacceptable under the circumstances" and was chosen "in conscious disregard of an excessive risk" to plaintiff's health. *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (citation omitted). The record does not suggest that the TLC Committee's prioritization of plaintiff's right shoulder was medically unacceptable or that they disregarded a known risk. At most, the evidence establishes a difference of opinion between medical providers, which does not constitute deliberate indifference. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (explaining that "a plaintiff's showing of nothing more than "a difference of medical opinion" as to the need to pursue one course of treatment over another was insufficient, as a matter of law, to establish deliberate indifference"); *see also Francis v. Hammond*, 673 Fed. App'x 661, 663-64 (9th Cir. Dec. 14, 2016) (rejecting deliberate indifference claim based on prison physicians' rejection of medical providers' recommendation for orthopedic consultation and an MRI for a shoulder injury, finding that the "difference of medical opinion" does not establish deliberate indifference).

Finally, the record does not support plaintiff's claim that defendants acted with deliberate indifference to his needs when they "canceled" surgery for his right shoulder in the late summer

---

[1] The parties dispute whether defendant Koltes had any personal involvement in the decisions involving plaintiff's medical care. Given my conclusion that plaintiff fails to establish deliberate indifference on the part of any defendant, I need not decide this issue.

9   - OPINION AND ORDER

of 2015. Viewed in the light most favorable to plaintiff, the TLC Committee became impatient with Dr. Peterson's perceived insistence on a left-shoulder MRI and transferred plaintiff's care to Dr. Foote, which presumably canceled the surgery authorized with Dr. Peterson. It is undisputed that, after plaintiff reinjured his shoulder in September 2015 and requested surgery, the TLC Committee authorized surgery with Dr. Foote within a few weeks. Gulick Decl. ¶ 58.

Even if defendants' cancellation of surgery caused it to be postponed until January 2016, the delay resulted from a difference of opinion between the TLC Committee and Dr. Peterson regarding the appropriate course of treatment for plaintiff's shoulders, "which cannot support a claim of deliberate indifference." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Further, plaintiff fails to submit evidence showing "substantial harm" arising from the four-month delay in surgery. *Wood*, 900 F.2d at 1335. Notably, plaintiff himself postponed shoulder surgery in September 2014 after it was first authorized and again in August 2015 for a "few months" to pursue strengthening exercises and seek treatment for his left shoulder. Gulick ¶¶ 38, 54 & Att. 2 at 58.

Given the undisputed facts of record, no genuine issue of material fact precludes summary judgment on plaintiff's claims.

## CONCLUSION

For the reasons explained above, defendants' Motion for Summary Judgment (ECF No. 40) is GRANTED.

IT IS SO ORDERED.

DATED this 17th day of August, 2018.

s/ Michael J. McShane
Michael J. McShane
United States District Judge